**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cesar Uribe,<br><br>          Plaintiff,<br><br>vs.<br><br>P.A. McGuinness, et al.,<br><br>          Defendant. | No. 1:07-cv-1064-GMS-PHX<br><br>**ORDER** |

Plaintiff Cesar Uribe brought this civil rights action under 42 U.S.C. § 1983 against Defendant Dr. Nandan Bhatt, a physician at the California Substance Abuse Treatment Facility ("CSATF").[1] Pending before this Court is Defendant's Motion for Summary Judgment or, in the alternative, Summary Adjudication of Issues (Doc. 114). For the reasons set forth below, the Court grants Defendant's Motion.[2]

**BACKGROUND**

**I.   Factual Background**

The parties' statements set out the following facts. Plaintiff Uribe is an inmate

---

[1] Defendant Bhatt is the only remaining Defendant in this action because P.A. McGuinness was terminated on June 2, 2009 (Doc. 50), and Benjamin Edger was voluntarily dismissed on May 28, 2010 (Doc. 116).

[2] Because summary judgment is rendered on the entire action, Defendant's alternative motion for summary adjudication is moot. FED. R. CIV. P. 56(d).

1  incarcerated in the California Department of Corrections and Rehabilitation ("CDCR") and
2  housed at the CSATF in Corcoran, California. (Doc. 129). Plaintiff Uribe was diagnosed
3  with testicular cancer in March 2004, and from December 2, 2004 through January 7, 2005,
4  Plaintiff underwent radiation treatment for his cancer at the Florence R. Wheeler Cancer
5  Center ("FWCC"), located outside of the correctional facility. (*Id*.).

6  Defendant, Dr. Bhatt, is a duly licensed primary care doctor employed by CDCR at
7  CSATF. (*Id*.). In this capacity, Dr. Bhatt evaluates patients' medical condition, treats those
8  conditions that he is qualified to treat, and refers those whose medical condition is beyond
9  his general scope of competence to outside physicians. (*Id*.). Under California Regulations,
10 only CDCR facility-employed health care staff, contractors paid to perform health services
11 for the facility, or persons employed as health care consultants are permitted, within the
12 scope of their licensure, to diagnose illness or prescribe medication and health care treatment
13 for inmates at CDCR institutions. 15 C.C.R. § 3354 (2010).[3]

14 Dr. Bhatt first became involved in Plaintiff Uribe's radiation treatment for his cancer
15 on December 6, 2004, when he was informed that Mr. Uribe had undergone treatment at
16 FWCC and was advised that he had been prescribed Zofran, an anti-nausea medication, by
17 Dr. Davis, the outside oncologist. (*Id*.). On that day, Dr. Bhatt prescribed Mr. Uribe a thirty-
18 day supply of metoclopramide (brand name: Regan) for mitigating potential nausea resulting
19 from the radiation. (*Id*.). However, the pharmacy erroneously issued Plaintiff only a ten-day
20 supply of metoclopramide pills. (*Id*.).

21 On December 9, 2004, Dr. Bhatt saw Mr. Uribe at the clinic. Mr. Uribe informed
22 Defendant that he was undergoing radiation therapy. (*Id*.). Plaintiff alleges that during that
23 visit he told Dr. Bhatt that the metoclopramide pills he had prescribed were not working and
24 that he was still feeling sick. (Doc. 128).

25 On or about December 21, 2004, upon recommendation by a physician at FWCC, Dr.

---

[3] Section 3354 further states that, "[h]ealth care personnel not employed by the department are not authorized to order treatment for an inmate. Such persons may offer opinions and recommendations for consideration by department health care staff . . ."

- 2 -

1  Bhatt prescribed Plaintiff a dietary supplement called Resource, to be taken three times a day
2  for 90 days. (Doc. 129). Plaintiff alleges that he only received Resource for "about 2 days".
3  (Doc. 128). On January 3, 2005, based on the recommendation of the outside oncologist,
4  another CDCR physician, Dr. Nguyen, prescribed Mr. Uribe Compazine for his nausea
5  symptoms.  (Doc. 129). On that day, Mr. Uribe complained of occasional nausea but no
6  vomiting. (Doc. 114).

7  A few days later, on January 7, 2005, Dr. Bhatt saw Mr. Uribe in the clinic again.
8  (Doc. 129). At that time Mr. Uribe said that he required Resource and complained of a rash
9  on his left arm. (*Id*.). Dr. Bhatt observed a small macular puritic rash on Mr. Uribe's arm and
10 prescribed him a cream. (*Id*.). He also noted that Plaintiff's weight was 135 pounds, down
11 from 139 pounds one month earlier, on December 9, 2004. (*Id*.). Otherwise, Mr. Uribe had
12 no new complaints, and admits that at this time he did not bother to tell Dr. Bhatt about his
13 nausea. (Doc. 128). At this visit, Dr. Bhatt changed Plaintiff's anti-nausea medication from
14 Compazine, which had been prescribed a few days earlier, to Phenergan for 90 days, as per
15 the recommendation of the treating oncologist. (Doc. 129). Dr. Bhatt also ordered that Mr.
16 Uribe be continued on Resource. (*Id*.).

17 Dr. Bhatt's next involvement with Mr. Uribe was not until March 3, 2005, when he
18 interviewed Plaintiff with respect to his 602 Administrative Appeal, filed on January 2, 2005.
19 (*Id*.). After reviewing Mr. Uribe's medical file, Dr. Bhatt determined that all of the various
20 anti-nausea medications prescribed to Plaintiff, including Metoclopramide, Compazine, and
21 Phenergan, were all appropriate. (*Id*.). Dr. Bhatt further determined that there was no
22 evidence in the file that Mr. Uribe ever had problems with any of the medication provided
23 at CSATF, that anyone on the staff had treated him with deliberate indifference or that he had
24 suffered any harm as a result of the staff's conduct in responding to his need for anti-nausea
25 medication. (*Id*.). Thus, Dr. Bhatt denied Mr. Uribe's 602 Appeal. (*Id*.). On July 12, 2005,
26 Plaintiff's 602 Appeal was partially granted by the Director's Review Level, but the Chief
27 of Inmate Appeals was unable to grant the monetary relief that Mr. Uribe requested, thereby
28

prompting the present matter before the Court. Accordingly, Plaintiff has exhausted all administrative remedies available to him.

Mr. Uribe filed his original Complaint in this action on June 25, 2007. (Doc. 1). A First Amended Complaint was filed on August 18, 2009. (Doc. 75). Plaintiff contends that as a result of Dr. Bhatt's deliberate indifference in initially prescribing Regan metoclopramide instead of Zofran, and his subsequent denial of any medication from December 14, 2004 to January 6, 2005, Plaintiff experienced nausea and vomiting, which led to hunger, headaches, fatigue, tiredness, abdominal pain, and weight loss.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material[] and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

The Court is mindful that Plaintiff is proceeding *pro se* and is incarcerated. "*Pro se*

prison inmates, with limited access to legal materials, occupy a position significantly different from that occupied by litigants represented by counsel." *Jacobsen v. Filler*, 790 F.2d 1362, 1365 n.4 (9th Cir. 1986) (citation omitted). Courts have a duty to liberally construe the pleadings of *pro se* litigants, particularly those filed by *pro se* prisoners. *See Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001). *Pro se* litigants are nonetheless bound by "the same rules of procedure that govern other litigants," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1987), including Rule 56's requirement that a nonmoving party "must present some significant probative evidence tending to support the complaint" to survive summary judgment. *Franklin v. Murphy*, 745 F.2d 1221, 1235 (9th Cir.1984) (citation and internal quotes omitted).

**II.   Analysis**

**A. Eighth Amendment Claim**

Prison officials "violate a prisoner's Eighth Amendment rights if they are deliberately indifferent to his serious medical needs." *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). A plaintiff must show (1) a serious medical need and (2) that the defendant's response was deliberately indifferent. *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006).

A serious medical need exists whenever the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez,* 298 F.3d 898 (9th Cir. 2002) (internal citation omitted) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)). Examples of serious medical needs include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1059–60.

The Court recognizes that frequent nausea and vomiting for a period of approximately

one month is something a reasonable doctor would find worthy of comment. In the instant case, over the course of his five-week radiation treatment, Mr. Uribe was prescribed three different types of anti-nausea medication by three different doctors. Moreover, Plaintiff has indicated that his symptoms significantly affected his daily activities such that he stopped eating full meals, and was unable to think clearly, to work a full day, or to participate in recreational activities. (Doc. 128). Finally, Mr. Uribe claims that as a result of vomiting or retching at least twice a day, he experienced substantial abdominal pain. (*Id*.). Taken together with the fact that a failure to treat Mr. Uribe's persistent and frequent nausea and vomiting could result in further significant injury to him, the Court finds that Plaintiff demonstrated a serious medical need.

The Court next turns to the subjective prong – whether Defendants' response to Plaintiff's serious medical need was deliberately indifferent. *See Jett*, 439 F.3d at 1096. A prison official is deliberately indifferent if he both knows of and disregards an excessive risk to an inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The deliberate indifference prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or medical need and (b) harm caused by the indifference. *Jett,* 439 F.3d at 1096.

Plaintiff's deliberate indifference claim is based on two allegations: 1) that Defendant Bhatt disregarded Dr. Davis' prescription for Zofran and instead "intentionally replaced it with his own incorrect prescription of 'chemo-therapy-patient' nausea medication" (Doc. 75), and 2) that this intentional error was compounded by the undisputed fact that CSATF pharmacy only dispensed a ten-day supply of metoclopramide as opposed to a thirty-day supply, thus denying Plaintiff any medication for several weeks. (*Id*.).

Dr. Bhatt maintains that, "[t]here are several medications available for treating nausea and vomiting that can be used interchangeably" and that metoclopramide is "an appropriate anti-nausea medication to mitigate potential nausea resulting from radiation therapy." (Doc. 114, Ex. E). The only probative evidence that Plaintiff supplies in opposition to Dr. Bhatt's

1  assertion is an excerpt from the Physicians' Desk Reference ("PDR") regarding Zofran.[4]
2  (Doc. 133, Ex. D). Upon close reading of the excerpt, however, the Court does not find the
3  PDR entry to support Plaintiff's allegation. The only mention of metoclopramide is in the
4  section titled "Clinical Trials," which notes that Zofran was significantly more effective than
5  metoclopramide in a trial involving patients receiving single high-dose radiotherapy. Plaintiff
6  did not undergo single high-dose radiotherapy, but rather was treated daily for a period of
7  five weeks. Accordingly, Plaintiff's reliance on the PDR's reference to a single clinical trial
8  that did not mirror his circumstances is misplaced.

9  Plaintiff also seems to suggest that metoclopramide is not as effective as Zofran
10 because on the two isolated instances where Dr. Davis provided him with a single tablet of
11 Zofran, once on the second day of his treatment and again on December 27, 2004, he did not
12 suffer from nausea and vomiting. (Doc. 128). Even if this Court were to assume in the
13 absence of testimony from Dr. Davis that Dr. Davis believed Zofran to be the more effective
14 medication, "a mere 'difference of medical opinion . . .[is] insufficient . . . to establish
15 deliberate indifference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation
16 omitted); *Sanchez v. Vild*, 891 F.2d 240 (9th Cir. 1989) (holding that a difference of medical
17 opinion as to treatment of a prisoner did not amount to deliberate indifference of a prisoner's
18 serious medical needs). To prevail on a claim involving choices between alternative courses
19 of treatment, a prisoner must show that the course of treatment the doctor chose was
20 medically unacceptable in light of the circumstances and that it was chosen in conscious
21 disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332
22 (9th Cir. 1996). Plaintiff has not demonstrated, through expert testimony or otherwise, that
23 Dr. Bhatt's decision to prescribe metoclopramide was either medically unacceptable or done
24 in conscious disregard to his health.  Under 15 C.C.R. §3354, outside physicians are not

---

[4] The Court cannot afford any weight to Dr. Davis' purported statement, as reported by Plaintiff, that metoclopramide was "only effective with chemotherapy patients and completely useless for radiation-therapy patients." (Doc. 128, 130). This statement constitutes inadmissible hearsay. FED. R. EVID. 801, 802.

1  authorized to order treatment for an inmate and Dr. Bhatt was not required to follow Dr.
2  Davis' recommendation to prescribe Zofran.  Furthermore, Dr. Bhatt contends that when a
3  medication recommended by an outside consultant physician is unavailable in a CDCR
4  institution, or if the CDCR physician believes that an equally effective medication is
5  preferable, a CDCR physician may instead prescribe a different but equivalent medication
6  which is available in the facility. (Doc. 114, Ex. E). Thus, it remained well within Dr. Bhatt's
7  discretion to prescribe Plaintiff metoclopramide, which in his medical opinion was as
8  effective as Zofran.

9        The second part of Plaintiff's deliberate indifference claim stems from the undisputed
10 fact that CSATF pharmacy only dispensed a ten-day supply of metoclopramide as opposed
11 to a thirty-day supply, thereby denying Plaintiff medication for a period of time. Plaintiff has
12 failed to present evidence upon which a reasonable jury could conclude that Dr. Bhatt may
13 be liable for the pharmacy's failure when it is undisputed that his prescription correctly called
14 for a thirty-day supply. Moreover, Plaintiff failed to name the CSATF pharmacy staff in this
15 action.

16       Plaintiff claims that contrary to Dr. Bhatt's contention that he was not aware of
17 Plaintiff's need for more medication, Defendant was put on notice because Dr. Davis
18 repeatedly gave the escorting officers who transported Plaintiff to and from FWCC a
19 prescription to hand deliver to the CSATF medical staff. (Doc. 128). Also, on one occasion
20 Dr. Davis' nurse picked up the phone and called someone, presumably the CSATF medical
21 staff, after Mr. Uribe complained about the lack of medication. (*Id*.). However, apart from
22 Dr. Davis' prescription for Compazine, dated January 3, 2005, which was issued by Dr.
23 Nguyen on the same day, Plaintiff has not submitted any probative evidence in support of his
24 allegations. Plaintiff also fails to submit admissible evidence that these intermediaries
25 actually informed Dr. Bhatt of his need for more medication. Thus, Plaintiff has not met his
26 burden of demonstrating that there exists a genuine issue of material fact as to whether Dr.
27 Bhatt was on notice. Accordingly, Plaintiff has failed to satisfy the first element of a
28

deliberate indifference claim, namely that Dr. Bhatt engaged in a purposeful act or failed to respond to Mr. Uribe's pain or medical need. Plaintiff has not provided admissible evidence that Defendant either prescribed the wrong medication or purposefully denied him an adequate quantity. Thus, Defendant is entitled to summary judgment on this claim.[5]

### B. Qualified Immunity

In his motion for summary judgment, Defendant Bhatt contends that he is entitled to qualified immunity for Plaintiff's § 1983 claims. As discussed in section II(A) above, Plaintiff has not made a *prima facie* showing that Dr. Bhatt violated his Eighth Amendment rights through deliberate indifference to Mr. Uribe's serious medical needs, thereby precluding the need for a qualified immunity analysis by the Court.

### C. State Law Claim for Medical Malpractice

On August 25, 2005, Mr. Uribe filed an application to present a late claim to the California Victim Compensation and Government Claims Board ("CVCGCB"). (Doc. 114, Ex. D). He alleged that the incident occurred between December 2, 2004 and January 6, 2005, when he was denied anti-nausea medication during radiation treatment for cancer. (*Id*.). On November 30, 2005, CVCGCB advised Mr. Uribe that its staff was recommending that his application be rejected, and on February 1, 2006, CVCGCB notified Mr. Uribe that it had rejected his application for leave to file a late claim. (*Id*.).

In his motion for summary judgment, Defendant argues that Mr. Uribe failed to satisfy the tort claim presentation prerequisite for a claim of relief under California state law for medical malpractice and that there's no evidence that Dr. Bhatt's actions were below the applicable standard of care or caused injury to Mr. Uribe. The Court has reviewed Plaintiff's Complaint (Doc. 1), First Amended Complaint (Doc. 75), Opposition to the Defendant's Motion for Summary Judgment (Doc. 128), and Declaration in Support of Opposition to

---

[5] By conclusively finding that Defendant did not purposefully act or fail to respond to Mr. Uribe's pain or medical need, the Court finds it unnecessary to discuss the second element of a deliberate indifference finding, namely whether the indifference caused Plaintiff any harm. *Jett,* 439 F.3d at 1096.

1  Defendant's Motion for Summary Judgment (Doc. 130) and has not found any claim for
2  medical malpractice under state law. In fact, in the Plaintiff's Reproduction of Defendant's
3  Statement of Allegedly Undisputed Material Facts, he admits that he has not expressly made
4  a claim for relief under California law nor alleged compliance with the claim presentation
5  of the California Tort Claims Act in either his original Complaint or First Amended
6  Complaint. (Doc. 129). Given that the scope of this Court's ruling can not exceed the scope
7  of Plaintiff's arguments, there are no state law claims for the Court to consider.

## CONCLUSION

9  Plaintiff has not raised any issues of material fact to support his allegation that the
10 Defendant violated his rights under the Eighth Amendment.

11 **IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment
12 (Doc. 114) is **GRANTED**.

13 DATED this 12th day of November, 2010.

G. Murray Snow
United States District Judge